UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL JOSEPH NILIO,

Petitioner,

v. Case No. 3:19-cv-445-BJD-SJH

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, et al.,

Respondents.

---

**ORDER**

**I. Status**

Petitioner, Michael Joseph Nilio, is proceeding pro se on an amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 5; Am. Pet.). He challenges a 2017 state court (Duval County, Florida) judgment of conviction for possession of a firearm by a convicted felon, aggravated assault, and false imprisonment. *See* Am. Pet. at 1. Petitioner asserts five grounds for relief. *Id.* at 5–12. He elaborates on each ground through a supporting memorandum (Doc. 6; Pet. Mem.). Respondents filed a response (Doc. 20; Resp.) with exhibits (Docs. 20-1 to 20-13; Ex(s). 1 to 13). Petitioner filed a reply (Doc. 23; Reply), in which he requests that the Court set this case for an evidentiary hearing so he can demonstrate his trial counsel was ineffective for inducing an involuntary

plea. *See* Reply at 3. Upon review, no evidentiary proceedings are warranted in this Court.[1]

## II. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (explaining AEDPA deference), *abrogation in part on other grounds recognized by Smith v. Comm'r, Ala. Dep't of Corr.*, 67 F.4th 1335, 1348 (11th Cir. 2023). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Id.* (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)).

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* The Court finds that "further factual development" is unnecessary. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. *Marshall v. Sec'y Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 584 U.S. 122, 125–26 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." *Id.* § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *Lockyer*, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Williams v. Taylor*, 529 U.S. 362, 410 (2000) ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.").

*Bishop v. Warden, GDCP*, 726 F.3d 1243, 1253–54 (11th Cir. 2013) (parallel citations omitted).

"AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe v. Warden*, 834 F.3d 1323, 1337–38 (11th Cir.

2016) (explaining in detail the parameters "for limited federal review" of state court decisions under § 2254(d)(1) and (d)(2)). This standard is "meant to be" a "difficult" one to meet. *Richter*, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

**B. Exhaustion and Procedural Default**

There are prerequisites to federal habeas review. Before bringing a federal habeas action under § 2254, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see*

*also Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that *Boerckel* applies to the state collateral review process as well as the direct appeal process").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365–66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (parallel citations omitted).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default, which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See, e.g.*, *Coleman*, 501 U.S. at 747–48; *Wainwright v. Sykes*, 433 U.S. 72, 84–85 (1977). A state court's

> invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g., Walker v. Martin*, 131 S. Ct. 1120, 1127–28 (2011); *Beard v. Kindler*, 130 S. Ct. 612, 617–18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 501 U.S. at 750.

*Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012) (parallel citations omitted). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default or (2) a fundamental miscarriage of justice. *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting [*Murray v.*] *Carrier*, 477 U.S. [478,] 488 [(1986)]). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *Id.* at 1261 (quoting *Carrier*, 477 U.S. at 494).

*Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) (parallel citation omitted).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Carrier*, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

*Ward*, 592 F.3d at 1157 (parallel citation omitted). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. *Schlup*, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that (1) counsel's performance was outside the wide range of reasonable, professional assistance, and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 687.

The two-part *Strickland* test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see also Lynch v. Sec'y Fla. Dep't of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015). When a petitioner pled guilty, to establish prejudice, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (footnote omitted); *see also Lynch*, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the *Strickland* test before the other." *Ward*, 592 F.3d at 1163. Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Id.* (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks omitted). In other words, "[i]n addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference—this one to a state court's decision—when [federal courts] are considering whether to grant federal habeas relief from a state court's decision." *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004).

If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court

decision denying the claim. *Richter*, 562 U.S. at 105. As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689).

## III. Analysis

In his amended petition and supporting memorandum, Petitioner primarily argues that his plea was involuntarily induced because he was not clearly advised of the terms or "direct consequences" of his guilty plea, he was incompetent to proceed, and he was denied "conflict-free counsel." *See* Am. Pet. at 5–12; *see also generally* Pet. Mem. As set forth in the plea agreement, the specific terms of Petitioner's negotiated sentence were as follows: in exchange for a guilty plea on three counts as charged by information, Petitioner would be sentenced to a total of twelve years of incarceration; a three-year minimum mandatory applied to count one; the sentence would be followed by two years of probation; and the State Attorney would not object to running his sentences concurrent with the sentence to be imposed in his pending Nassau County

violation of probation cases.[2] *See* Ex. 4 at 2. The plea agreement was signed by Petitioner and his attorney on May 10, 2017. *Id.* at 15.

At the plea hearing, Petitioner's counsel advised the trial court that, as per the agreement, the State Attorney agreed "to have no objection to . . . th[e] sentence running concurrent with the sentence that's going to be imposed . . . in Nassau County." *Id.* at 6. The trial court sentenced Petitioner in accordance with the negotiated plea agreement and, after stating the sentence on the record, asked if that was "everything on the sentence." *Id.* at 12. Petitioner's counsel stated, "And also the State does not have an objection to this sentence running concurrent with any sentence [Petitioner] receives in the . . . Nassau County violation of probation case." *Id.* The State clarified that the non-objection was made "with the understanding that the State ha[d] made no promises regarding the Nassau County cases." *Id.* at 13.

On May 10, 2017, the trial court entered a written judgment and sentence. *See* Ex. 3 at 5–8. The written sentence did not reflect whether Petitioner's sentence would run concurrent (versus consecutive) with any other

[2] Plaintiff's Duval County arrest violated the terms of his five-year probationary period imposed in eight Nassau County cases. *See* Ex. 5 at 2, 6. The Nassau County court revoked his probation and sentenced him to serve twenty-four months in prison. *Id.* However, the violation of probation sentence was imposed after Plaintiff pled guilty and was sentenced in the Duval County case that is the subject of his petition. *Id.*

sentence imposed by any other court. *See id.* at 8. However, in the trial court's order of probation, under "Special Conditions," it noted that Petitioner's "case [was to] run concurrent with [the] Nassau County Cases." *See* Ex. 10 at 25.

The following month, on June 29, 2017, Petitioner was adjudicated guilty in the Nassau County cases. *See* Ex. 5 at 14. In those proceedings, Petitioner was represented by the same trial counsel as in his Duval County case. *See id.* at 17. The Nassau County court sentenced Petitioner to a term of twenty-four months, but, in accordance with Petitioner's negotiated plea in that case, the trial judge ordered that his sentence was to run consecutive with the sentence imposed in Duval County. *Id.* at 12, 27.[3]

[3] Although not a part of the record provided to this Court, Petitioner filed a motion for postconviction relief in the Nassau County case, "arguing that it was required that the sentence . . . run concurrent with the Duval County Case . . . ." *See State v. Nilio*, No. 2010-513-CF (et al.) (Fla. 4th Cir. Ct. Sept. 28, 2018), *available at* https://www.nassauclerk.com/191/Records-Search (last visited Aug. 5, 2026). The Nassau County court denied his motion, explaining that the State Attorney's "agreement" with Petitioner in the Duval County case "was not binding on th[e] court." *See id.* The court further noted that, Petitioner "expressly agreed in his Nassau County case that his sentence would run 'consecutive to [the] Duval [County case] . . . sentence,' as evidenced by the [negotiated plea] plea form," which Petitioner signed and entered "freely, voluntarily, and knowingly." *Id.* Indeed, according to his negotiated plea form in the Nassau County case, the terms of his sentence included that it would run "consecutive to Duval case 2017 CF 1862." *Id.* (Doc. 513). Petitioner challenged the Nassau County conviction and sentence in this Court by filing a habeas petition under § 2254. *See* Case No. 3:20-cv-499-WWB-PDB. His petition was denied and the case dismissed for his failure to exhaust his state court remedies and on the merits. *See id.* (Doc. 50). Notably, in that petition, Nilio did not challenge his Nassau County sentence running consecutive with the one imposed in Duval County, despite his alleged "agreement" with the State and that he had the same attorney in both cases. *See id.*

**Ground I**

First, Petitioner complains that his attorney was ineffective for misinforming him of the "specific terms and direct consequences of the written [plea] agreement and [the] promises made" by the State that his sentence would run concurrent with the one imposed in the Nassau County case. *See* Am. Pet. at 5; *see also* Pet. Mem. at 3–4. He explains that, in negotiating his plea agreement with the State, he and his attorney understood that any sentence imposed in his Duval County case would run concurrent with any as-yet-to-be-imposed sentence by Nassau County. *See* Pet. Mem. at 3–4. He suggests that when the State announced at his plea hearing that its non-objection was not a promise concerning the imposition of his future Nassau County sentence, his attorney should have "stopped the proceedings," but instead she "simply proceeded with the plea hearing." *Id.* at 4–5, 7.

Ground I has two sub-points, but the gravamen of Petitioner's argument is that the State altered the terms of the plea agreement at the plea hearing or did not honor the terms of the agreement, and his attorney did not object.[4]

[4] In the first sub-point, Petitioner complains primarily about his attorney's shortcomings at the plea hearing, but he also blames State Attorney Melissa Nelson for not ensuring that his sentences in Duval and Nassau Counties—both of which are under the purview of Nelson's office—would run concurrent, as per the plea agreement in the Duval County case. *See* Pet. Mem. at 4. In the second sub-point, Petitioner reiterates that Melissa Nelson "controls" both counties, and the State

As such, the Court does not construe the "sub-points" as separate sub-claims. Petitioner raised a similar claim in the trial court through a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (3.850 Motion). *See* Ex. 6 at 2, 9–10, 13, 15–19. However, he did so through two grounds, which the trial court considered (along with his third ground) as presenting a single claim for the ineffective assistance of trial counsel. *See* Ex. 9 at 2, 4. In denying the claim (presented in three separate grounds of Petitioner's Rule 3.850 Motion), the trial court explained as follows:

> The Defendant takes exception with his sentences in another court being run consecutive to the sentence imposed by this court. The totality of the record reflects the Defendant was told, and understood that the State had no objection to the concurrent sentences and that no promises were made. Further, in fact, this court in its probation order did include that the sentences would be concurrent. This court, nor his counsel could determine what the Judge in another jurisdiction would do on his sentencing[,] thus the requirement he understand no promises were made. The totality of the records rebuts his allegations.

Ex. 9 at 4 (record citations omitted).[5] Petitioner appealed the trial court's denial of his Rule 3.850 Motion. *See* Ex. 12 at 4. The First District Court of

---

Attorney's Office "did not follow through with [the] promise" to run his sentences concurrent with one another. *Id.* at 8.

[5] In the trial court, Petitioner also challenged the Duval County sentence through a pro se motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). Ex. 7 at 3. The trial court denied that motion as well, explaining that the "record reveals [Petitioner] was never made any promises" regarding his sentence imposed in another county." Ex. 8 at 2. Rather, the court noted, the State "had no objection to his sentence running concurrent to a yet un-sentenced case in another jurisdiction," and Petitioner "was sentenced according to his plea

Appeal (First DCA) *per curiam* affirmed the trial court's order without a written opinion. *Id.* at 33.

Addressing this claim in accordance with the deferential standard for federal court review of state court adjudications, the Court finds, upon thorough review of the record and the applicable law, that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Accordingly, Ground I is denied.

**Ground II**

Petitioner contends his attorney was ineffective for "misinform[ing] [him] . . . when the probationary portion of [his] sentences would begin and end." *See* Am. Pet. at 7. He explains that he believed, based on his consultation with his lawyer, that his probationary period in the Duval County case would commence after he completed his twelve-year sentence when in fact, his probationary period will not commence until he also completes the two-year Nassau County sentence, which the Nassau County court ordered to run consecutive with the Duval County sentence. *See* Pet. Mem. at 10–11.

agreement." *Id.* Petitioner filed an appeal, Ex. 13 at 4, and the First DCA *per curiam* affirmed the trial court's order without a written opinion, *id.* at 3.

Respondent argues Petitioner did not raise this claim in the state court but observes that the claim "is really just an argument about the ramifications or consequences of the fact that there was no agreement that the Nassau court run its sentences concurrently with the Duval County sentence." *See* Resp. at 21.

Petitioner raised this claim as ground three in his Rule 3.850 Motion, *see* Ex. 6 at 19–21, but the state court treated it and his first two grounds as raising a single claim of ineffective assistance for counsel's failure to properly advise him on the structure of his sentence in relation to the one imposed by the Nassau County court, *see* Ex. 9 at 4. As did the state court, this Court construes Ground II as a restatement or continuation of the ineffective assistance of counsel claim raised in Ground I. As such, Ground II is denied for the same reason as Ground I.

**Ground III**

Petitioner argues his attorney was ineffective for failing to advise him that, in accordance with Florida law, his entry of a guilty plea would prevent him from having contact with the victim.[6] *See* Am. Pet. at 8; *see also* Pet. Mem. at 11. He claims that he asked his attorney before he entered the plea

[6] The victim was Petitioner's fiancé, with whom he lived at the time. *See* Ex. 6 at 4. She paid his legal fees. *Id.* at 5.

agreement whether any law or court order would forbid him from having contact with the victim, his fiancé. *See* Pet. Mem. at 12. According to Petitioner, his attorney responded, "No, I am not aware of anything under Florida law that would stop you from having contact with [the victim] while you are in prison or on probation." *Id.* After Petitioner started his prison sentence, he learned that under Florida Statutes section 921.244, contact with a victim is forbidden if a defendant enters a guilty plea.[7] *Id.* He claims he would not have pled guilty had he been properly advised that his plea would result in a "no contact order with the victim." *Id.* at 13.

Petitioner raised a similar claim as ground four in his Rule 3.850 Motion. *See* Ex. 6 at 22–25. In denying the claim, the trial court explained as follows:

> [T]he Defendant alleges that . . . the Department of Corrections said he could have no contact with the victim. Once again, there was never any provision in the plea with this court prohibiting said contact. Neither the court, nor counsel have jurisdiction over actions by Department of Corrections at the prison level. Neither counsel nor the court took any action to limit the Defendant's contact with the victim.

---

[7] This section provides, "At the time of sentencing an offender convicted of a violation of s. 794.011, s. 800.04, s. 847.0135(5), or any offense in s. 775.084(1)(b)1.a.-o., the court shall order that the offender be prohibited from having any contact with the victim . . . ." Fla. Stat. § 921.244 (eff. Oct. 1, 2008). Petitioner was convicted of violating the following sections: 790.23(1)(a) and 775.087(2)(a)(1) (possession of a firearm by a convicted felon); 784.021(1)(a) and 741.28 (domestic aggravated assault); and 787.02(1)(a) (false imprisonment). *See* Ex. 3 at 2. As such, and as the record reflects, the trial court did not enter a no-contact order under Florida Statutes section 921.244.

Ex. 9 at 4 (record citations omitted). As previously noted, the First DCA *per curiam* affirmed without a written opinion the trial court's order denying Petitioner's Rule 3.850 Motion. *See* Ex. 12 at 33.

Addressing this claim in accordance with the deferential standard for federal court review of state court adjudications, the Court finds, upon thorough review of the record and the applicable law, that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Accordingly, Ground III is denied.

**Ground IV**[8]

Petitioner argues he was "denied his right to conflict free counsel" given the victim, his fiancé, was paying for his legal defense, and he believed his attorney acted on her behalf as demonstrated by his "performance" at the plea hearing. *See* Am. Pet. at 10; *see also* Pet. Mem. at 15–16. Petitioner's argument is vague, but he appears to suggest his attorney encouraged him to enter a guilty plea to "protect the victim from depositions and testifying at trial." *See*

[8] This claim is designated as Ground IV in the amended petition but as Ground V in the memorandum. *See* Am. Pet. at 10; Pet. Mem. at 15.

Pet. Mem. at 16. Respondent argues this claim is unexhausted because Petitioner did not raise it in the state court. *See* Resp. at 26.

Petitioner argued in ground six of his Rule 3.850 Motion that his attorney's cumulative errors (those raised in the other grounds of his Motion) demonstrated counsel was not "conflict-free" given the victim was paying for Petitioner's defense. *See* Ex. 6 at 27–30. The trial court denied the claim as follows:

> In this claim the Defendant makes an argument of cumulative errors. "Where individual claims of error alleged are either procedurally barred or without merit, a claim of cumulative error must fail." *Griffin v. State*, 866 So. 2d 1, 22 (Fla. 2003). Since Defendant's individual claims are without merit, this Ground is denied.
>
> The Defendant has failed to show that there is a reasonable probability that had counsel acted as the Defendant suggests he should have that the outcome would have been any different. Accordingly, this Court finds the Defendant has not established error on the part of counsel that prejudiced his case. *Strickland*, 446 U.S. 668.

Ex. 9 at 5. As previously noted, the First DCA *per curiam* affirmed without a written opinion the trial court's order denying Petitioner's Rule 3.850 Motion. *See* Ex. 12 at 33.

To the extent Petitioner presents the same claim to this Court that he did in the trial court, upon thorough review of the record and the applicable law, in accordance with a deferential standard of review, the Court finds that

the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). To the extent the claim was not raised in the state court, it is unexhausted and procedurally defaulted, and Petitioner fails to show cause for or prejudice from this procedural default. Accordingly, Ground IV is denied.

**Ground V**

In his final ground for relief, Petitioner argues his counsel was ineffective for failing to demand a competency hearing. *See* Am. Pet. at 12; *see also* Pet. Mem. at 14 (designated as Ground IV). Petitioner contends that he was incompetent to proceed at the plea hearing, and his attorney knew he had a mental health history because he was housed on the mental health wing at the jail, and he told his attorney he heard voices, saw demons, took medication, and previously had been Baker Acted. *See* Pet. Mem. at 14. He provides no evidence of his incompetency. *See id.*

Petitioner raised this claim as ground five in his Rule 3.850 Motion. *See* Ex. 6 at 25. The trial court denied the claim as follows:

> [T]he Defendant claims he was incompetent and his counsel should have done a competency evaluation. Based on the court's observation of the Defendant's demeanor during the pendency of the case and the court's recollection of the Defendant's behavior

and demeanor, there is no question the Defendant was competent to enter his plea. Further, counsel and the court share an obligation to insure [sic] the Defendant's competency and as no suggestion of incompetence was filed, it is clear, no issue of competency arose in counsel's mind or the court's. Further, by executing the blue plea form, this Court specifically found that:

> I have discussed this plea agreement with Defendant and Defendant's attorney in open court on this date and have asked Defendant questions, considered Defendant's responses, and observed Defendant's demeanor. I find that Defendant has the intelligence to comprehend these constitutional rights, the terms of this plea agreement, the contents of this written agreement, and these proceedings. I further find that Defendant has entered this plea freely and voluntarily and is not under the influence of any disability, substance, drug or condition which would interfere with Defendant's ability to understand and appreciate the terms of this plea agreement and its consequences.

Finally, the plethora of professional and articulate pleadings filed by the Defendant since the entry of his plea demonstrate his continued competence.

Ex. 9 at 4–5 (footnote and record citations omitted). The trial court observed in a footnote that, at the time, it had been paying particular attention to the demeanor of defendants during their plea colloquies given the recent proclivity of criminal defendants to assert after-the-fact claims of incompetence in motions for postconviction relief:

> This claim has recently become a hot go to allegation made in many Motions pursuant to 3.850. Thus this court has become very cognizant and alert to reviewing the demeanor of all inmates prior to accepting a plea as it is the court's duty to insure [sic] a

> Defendant is competent to enter a plea. Although the Court initially asked the State to respond and the State conceded the need for an evidentiary hearing on this issue, the plea and this defendant are very recent and well within the recollection of the trial court.

*Id.* at 4 n.1. As previously noted, the First DCA *per curiam* affirmed without a written opinion the trial court's order denying Petitioner's Rule 3.850 Motion. *See* Ex. 12 at 33.

Addressing this claim in accordance with the deferential standard for federal court review of state court adjudications, the Court finds, upon thorough review of the record and the applicable law, that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Ground V is denied.

Accordingly, it is now

**ORDERED AND ADJUDGED**:

1. The Amended Petition (Doc. 5) is **DENIED** and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of Court** shall enter judgment dismissing this action with prejudice and close this case.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability.[9] Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of August, 2026.

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Michael Joseph Nilio
Counsel of Record

[9] The court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller–El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). Upon due consideration of the record as a whole, this Court will deny a certificate of appealability.